UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

PDB LIMITED,

                    Plaintiff,

       -v-

PETRÓLEOS DE VENEZUELA, S.A. and
PDVSA PETRÓLEO, S.A.,

               Defendants.

------------------------------------------------------- X

Case No. 1:23-cv-10843-AT
[Rel. No. 1:23-cv-09933-AT]

**PETRÓLEOS DE VENEZUELA, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 1

    a.      The Illegitimate Nicolás Maduro Regime Versus The Democratically
        Elected 2015 National Assembly ............................................................. 1

        i.      In opposition to Nicolás Maduro's authoritarian government, the
            Venezuelan people elect the 2015 National Assembly. ........................... 1

        ii.     The National Assembly appoints Juan Guaidó as Interim President,
            who then appoints an ad hoc board to manage Venezuela's state-
            owned oil company, PDVSA. ................................................................. 4

    b.      Factual and Procedural History of This Action .................................... 5

III.    LEGAL STANDARD .......................................................................................... 7

IV.     ARGUMENT ....................................................................................................... 8

    a.      Because PDVSA is a Foreign Instrumentality, the Court's Jurisdiction
        Over PDVSA is Determined by the FSIA ............................................. 8

    b.      Plaintiff Failed to Serve PDVSA in Accordance With the FSIA ......... 10

    c.      Due to Plaintiff's Failure to Substantially Comply With the FSIA's
        Service Mandates, the Court Lacks Personal Jurisdiction Over PDVSA ............. 12

V.      CONCLUSION .................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Cases**

*Agbor v. Presidency of Republic of Equatorial Guinea*,
    2019 WL 3526550 (S.D.N.Y. Aug. 1, 2019) ........................................................ 16

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) .......................................................................................... 11

*Bartlett v. Baasiri*,
    81 F.4th 28 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1456 (2024) .......................... 10

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
    735 F.3d 72 (2d Cir. 2013) ................................................................................ 11

*Chettri v. Nepal Bangladesh Bank, Ltd.*,
    2014 WL 4354668 (S.D.N.Y. Sept. 2, 2014), *aff'd sub nom. Chettri v. Nepal Rastra
    Bank*, 834 F.3d 50 (2d Cir. 2016) ......................................................... 12, 13, 14

*Concord Reinsurance Co. v. Caja Navional De Ahorro Y Seguro*,
    1994 WL 86401 (S.D.N.Y. Mar. 16, 1994) ........................................................ 15

*Doe v. Fed. Republic of Germany*,
    2023 WL 6785813 (S.D.N.Y. Oct. 13, 2023) ...................................................... 12

*Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*,
    2019 WL 3242585 (S.D.N.Y. July 3, 2019) ........................................................ 10

*Howe v. Embassy of Italy*,
    68 F. Supp. 3d 26 (D.D.C. 2014) ...................................................................... 16

*In re Terrorist Attacks on Sept. 11, 2001*,
    2022 WL 1088567 (S.D.N.Y. Apr. 5, 2022) ....................................................... 12

*Jiménez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019), *as revised* (Aug. 12, 2019), *aff'd*, 237 A.3d 68 (Del.
    2020) ............................................................................................................ 6, 7

*Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*,
    2004 WL 1574732 (S.D.N.Y. July 13, 2004) ...................................................... 14

*Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*,
    2024 WL 3197606 (S.D.N.Y. June 27, 2024) ...................................................... 9

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) ........................................................................... 11, 16

*NuMSP, LLC v. St. Etienne*,
    462 F. Supp. 3d 330 (S.D.N.Y. 2020) ................................................................. 9

*Pinnacle Madison Ave. Corp. v. Italian Trade Agency*,
    2022 WL 20472090 (S.D.N.Y. Sept. 30, 2022) .................................................... 15

*Recyclers Consulting Group, Inc. v. IBM-Japan, Ltd.*,
    1997 WL 615014 (S.D.N.Y. Oct. 3, 1997) ......................................................... 15

*Sakhrani v. Takhi*,
 1997 WL 33477654 (S.D.N.Y. Sept. 10, 1997) ........................................................ 14

*Skanga Energy & Marine Ltd. v. Arevenca, S.A.*,
 2014 WL 3928704 (S.D.N.Y. Aug. 12, 2014) ......................................................... 10

*Weingeist v. Tropix Media & Ent.*,
 2022 WL 970589 (S.D.N.Y. Mar. 30, 2022) ........................................................... 13

*Yak v. BiggerPockets, L.L.C. et al.*,
 2022 WL 67740 (2d Cir. Jan. 7, 2022) ...................................................................... 9

## Statutes

28 U.S.C. § 1330 ................................................................................................................ 1

28 U.S.C. § 1330(a) – (b) .................................................................................................. 8

28 U.S.C. § 1441 ................................................................................................................ 1

28 U.S.C. § 1603(b) ........................................................................................................... 8

28 U.S.C. § 1608(b) ..................................................................................................... 9, 10

28 U.S.C. § 1608(b)(1) ...................................................................................................... 9

28 U.S.C. § 1608(b)(2) ...................................................................................................... 9

28 U.S.C. § 1608(b)(3) .............................................................................................. 9, 11, 12

28 U.S.C. §§ 1602 – 11 ...................................................................................................... 1

## Rules

F.R.C.P. 12(b)(2) ...................................................................................... 1, 7, 12, 13

## Other Authorities

Betilde Muñoz-Pogossian & Alexandra Winkler, *The Persistence of the Venezuelan
 Migrant and Refugee Crisis*, CTR. FOR STRATEGIC & INT'L STUD. (Nov. 27, 2023),
 https://www.csis.org/analysis/persistence-venezuelan-migrant-and-refugee-crisis ............... 1, 4

Bradley A. Freden, Deputy Permanent Representative of the U.S., U.S. Mission to the
 Org. of Am. States, Remarks at the Special Permanent Council Meeting:  OAS
 Resolution Condemns the Fraudulent Elections in Venezuela (Dec. 9, 2020),
 https://usoas.usmission.gov/oas-resolution-condemns-the-fraudulent-elections-in-
 venezuela ....................................................................................................................... 2

CLARE RIBANDO SEELKE, CONG. RSCH. SERV., IF10715, VENEZUELA: OVERVIEW OF U.S.
 SANCTIONS POLICY (2024), available at
 https://crsreports.congress.gov/product/pdf/IF/IF10715 .................................................. 3, 11

*Corporate Governance*, PDVSA,
 http://www.pdvsa.com/index.php?option=com_content&view=article&id=6558&Itemi
 d=891&lang=en ............................................................................................................. 5

Eliza Mackintosh, *European Nations Recognize Juan Guaido as Venezuela's Interim President*, CNN (Feb. 4, 2019), https://www.cnn.com/2019/02/04/americas/europe-guaido-venezuela-president-intl/index.html ............................................................................... 4

National Assembly of Venezuela, *Acuerdo Reiterando el Desconocimiento de la Farsa Realizada el 20 de Mayo de 2018 para la Supuesta Elección del Presidente de la República* [Agreement Reiterating the Refusal to Acknowledge the Farce Realized on May 20, 2018 for the Alleged Election of the President of the Republic], (May 22, 2018) https://www.asambleanacionalvenezuela.org/actos/detalle/acuerdo-reiterando-el-desconocimiento-de-la-farsa-realizada-el-20-de-mayo-de-2018-para-la-supuesta-eleccion-del-presidente-de-la-republica-275 ........................................................................... 3, 4

Press Release, Heather Nauert, Dep't Spokesperson, U.S. Embassy & Consulate in Ecuador, Venezuela's Illegitimate National Constituent Assembly (Aug. 3, 2017), https://ec.usembassy.gov/venezuelas-illegitimate-national-constituent-assembly/ ................... 2

Press Release, Michael R. Pompeo, Sec'y of State, Recognition of Juan Guaido as Venezuela's Interim President (Jan. 23, 2019), https://2017-2021.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/#:~:text=Washington%2C%20DC-,January%2023%2C%202019,in%20restoring%20democracy%20to%20Venezuela .............. 4

Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, U.S. Recognition of Venezuela's 2015 National Assembly and Interim President Guaidó (Jan. 4, 2022), https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-interim-president-guaido/ ...................................................................................................... 4

Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/ .............................................................................................................................. 1, 2

Press Release, Off. of the Press Sec'y, U.S. Embassy & Consulate in Ecuador, Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019) https://ec.usembassy.gov/statement-from-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-as-the-interim-president-of-venezuela/ .................................................................................................................................. 4

Press Release, Off. of the Spokesperson, U.S. Dep't of State, The United States Takes Action Against Corrupt Maduro Regime Officials (June 27, 2019), https://uy.usembassy.gov/the-united-states-takes-action-against-corrupt-maduro-regime-officials/ ............................................................................................................................ 4

*Service of Process*, CORPORATION SERVICE COMPANY, https://www.cscglobal.com/service/entity-solutions/registered-agent-services/service-of-process/ (last visited Aug. 1, 2024) ................................................................................. 10

Statement, Andrea M. Gacki, Director, Off. of Foreign Assets Control, General License No. 31B: Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons (Jan. 9, 2023), https://ofac.treasury.gov/media/930241/download?inline ......................................................... 2

*The Reality of PDVSA Ad Hoc*, PDVSA AD HOC, https://pdvsa-adhoc.com/en/the-reality-of-pdvsa-ad-hoc/ .............................................................................................................. 5

U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., Venezuela Human Rights Practices Report (2023) § 3, available at https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/venezuela/ ............................................................. 2

*Venezuela: A Democratic Crisis*, U.S. Dep't of State: Bureau of W. Hemisphere Affs., https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/#crisis ................................... 2, 3

*What Has Venezuela's Constituent Assembly Achieved?*, BBC NEWS (Aug. 30, 2017), https://www.bbc.com/news/world-latin-america-41094889 ..................................................... 2

William Neuman & Nicholas Casey, Venezuela Election Won by Maduro Amid Widespread Disillusionment, N.Y. Times (May 20, 2018), https://www.nytimes.com/2018/05/20/world/americas/venezuela-election.html...................... 2

## I.      <u>INTRODUCTION</u>

For nearly half a century, the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1441, 1602 – 11 (the "FSIA") has afforded foreign instrumentalities certain protections from suits in the United States as a gesture of comity between the United States and foreign sovereigns. To that end, United States courts may exercise personal jurisdiction over foreign instrumentalities only where such instrumentalities have been served in accordance with the FSIA—meaning that they have received ***actual notice*** of the suits against them.  Plaintiff PDB Limited ("Plaintiff") has deprived Defendant Petróleos de Venezuela ("PDVSA"), an instrumentality of the Bolivarian Republic of Venezuela ("Venezuela"), of this fundamental protection.

Plaintiff initiated this action, seeking over $194,332,970.00 in damages, yet failed to serve PDVSA, thereby all but ensuring that PDVSA would be unable to defend itself against Plaintiff's claims.  Indeed, despite knowing that it had failed to comply with the FSIA's service requirements, Plaintiff attempted to obtain a default judgment against PDVSA.  While PDVSA ultimately learned of this action through its own diligence, because Plaintiff never served PDVSA with adequate process, it failed to establish the Court's jurisdiction over PDVSA.  Accordingly, PDVSA respectfully requests that the Court dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(2).

## II.      <u>BACKGROUND</u>

### a.      <u>The Illegitimate Nicolás Maduro Regime Versus The Democratically Elected 2015 National Assembly</u>

> i.      *In opposition to Nicolás Maduro's authoritarian government, the Venezuelan people elect the 2015 National Assembly.*

Since taking power as Venezuela's President in 2013, Nicolás Maduro's regime has been widely characterized as authoritarian and anti-democratic, and he has been accused of political

repression and human rights violations.[1]  Under his rule, Venezuela has undergone one of the most severe economic depressions and migration crises of the 21st century.[2]  Further, and as relevant to this litigation, under the Maduro regime, Venezuela and Venezuela's state-owned oil company, PDVSA, have accrued substantial debt to foreign investors.

In December 2015, in "[t]he last democratic election in Venezuela," the Venezuelan people "overwhelming rejected Maduro and voted for opposition control" of Venezuela's legislature, the National Assembly (the "2015 National Assembly").[3]  The United States recognizes the 2015 National Assembly "as the last remaining democratic institution in Venezuela."[4]

However, Maduro refused to accept the 2015 parliamentary election results and—in an effort to usurp the 2015 National Assembly's legislative power—created a parallel National Constituent Assembly in 2017.[5]  Much of the international community denounced the National Constituent Assembly as unconstitutional,[6] and the United States considered it to be "the

---

[1] *See* Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/ [hereinafter Venezuela's Interim Government].

[2] *See* Betilde Muñoz-Pogossian & Alexandra Winkler, *The Persistence of the Venezuelan Migrant and Refugee Crisis*, CTR. FOR STRATEGIC & INT'L STUD. (Nov. 27, 2023), https://www.csis.org/analysis/persistence-venezuelan-migrant-and-refugee-crisis [hereinafter *Democratic Aspirations*].

[3] Bradley A. Freden, Deputy Permanent Representative of the U.S., U.S. Mission to the Org. of Am. States, Remarks at the Special Permanent Council Meeting:  OAS Resolution Condemns the Fraudulent Elections in Venezuela (Dec. 9, 2020), https://usoas.usmission.gov/oas-resolution-condemns-the-fraudulent-elections-in-venezuela.  The 2015 National Assembly, also known as the IV Venezuelan National Assembly, was seated on January 5, 2016.  *See* Statement, Andrea M. Gacki, Director, Off. of Foreign Assets Control, General License No. 31B:  Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons (Jan. 9, 2023), https://ofac.treasury.gov/media/930241/download?inline [hereinafter General License No. 31B].

[4] Venezuela's Interim Government, *supra* note 1.

[5] *See What Has Venezuela's Constituent Assembly Achieved?*, BBC NEWS (Aug. 30, 2017), https://www.bbc.com/news/world-latin-america-41094889.

[6] *See id.*

illegitimate product of a flawed process designed by the Maduro dictatorship to further its assault on democracy."[7]

In 2018, Maduro was re-elected for a second six-year term as President of Venezuela.[8] The 2018 presidential election, however, was globally condemned as fraudulent.[9] In particular, the United States decried the Maduro regime's "intimidation and disenfranchisement of voters . . . improper tabulation of the results . . . [and] outright bans on the participation of Venezuela's most popular political parties and candidates."[10] Moreover, the United States expanded pre-existing sanctions against Venezuela to prohibit certain transactions with the Maduro regime.[11] In relevant part, in January 2019, the U.S. Government "froze all property and interests in property of [PDVSA] . . . and prohibited U.S. persons (companies or individuals) from engaging in

---

[7] Press Release, Heather Nauert, Dep't Spokesperson, U.S. Embassy & Consulate in Ecuador, Venezuela's Illegitimate National Constituent Assembly (Aug. 3, 2017), https://ec.usembassy.gov/venezuelas-illegitimate-national-constituent-assembly/.

[8] William Neuman & Nicholas Casey, Venezuela Election Won by Maduro Amid Widespread Disillusionment, N.Y. Times (May 20, 2018), https://www.nytimes.com/2018/05/20/world/americas/venezuela-election.html.

[9] *See id.*; *see also Venezuela: A Democratic Crisis*, U.S. Dep't of State: Bureau of W. Hemisphere Affs., https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/#crisis (last visited July 30, 2024) [hereinafter *Democratic Crisis*]; U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., Venezuela Human Rights Practices Report (2023) § 3, available at https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/venezuela/; National Assembly of Venezuela, *Acuerdo Reiterando el Desconocimiento de la Farsa Realizada el 20 de Mayo de 2018 para la Supuesta Elección del Presidente de la República* [Agreement Reiterating the Refusal to Acknowledge the Farce Realized on May 20, 2018 for the Alleged Election of the President of the Republic], (May 22, 2018) https://www.asambleanacionalvenezuela.org/actos/detalle/acuerdo-reiterando-el-desconocimiento-de-la-farsa-realizada-el-20-de-mayo-de-2018-para-la-supuesta-eleccion-del-presidente-de-la-republica-275 [hereinafter *Acuerdo*].

[10] *Democratic Crisis*, *supra* note 9; *see also Acuerdo*, *supra* note 9.

[11] *See* CLARE RIBANDO SEELKE, CONG. RSCH. SERV., IF10715, VENEZUELA: OVERVIEW OF U.S. SANCTIONS POLICY (2024), available at https://crsreports.congress.gov/product/pdf/IF/IF10715.

transactions with [PDVSA]" without a license issued by the Office of Foreign Assets Control of the U.S. Department of the Treasury.[12]

> ## ii. The National Assembly appoints Juan Guaidó as Interim President, who then appoints an ad hoc board to manage Venezuela's state-owned oil company, PDVSA.

After Maduro declared victory in the 2018 Presidential election, the 2015 National Assembly invoked the Republic's Constitution to declare Maduro's presidency illegitimate[13] and appointed Juan Guaidó as the Interim President of Venezuela.[14]  The United States, the United Kingdom, and the European Union promptly recognized Guaidó as Venezuela's legitimate Interim President and called on Maduro to "step aside in favor of a legitimate leader reflecting the will of the Venezuelan people."[15]  Since 2019, the United States has fully endorsed the 2015 National Assembly and has supported efforts to seek a "peaceful and democratic path"[16] and restore democracy in Venezuela.[17]

---

[12] *Id.*

[13] *Acuerdo supra* note 9; *see also* Press Release, Off. of the Press Sec'y, U.S. Embassy & Consulate in Ecuador, Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019) https://ec.usembassy.gov/statement-from-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-as-the-interim-president-of-venezuela/.

[14] Press Release, Michael R. Pompeo, Sec'y of State, Recognition of Juan Guaido as Venezuela's Interim President (Jan. 23, 2019), https://2017-2021.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/#:~:text=Washington%2C%20DC-,January%2023%2C%202019,in%20restoring%20democracy%20to%20Venezuela.

[15] *Id.*; *see also* Eliza Mackintosh, *European Nations Recognize Juan Guaido as Venezuela's Interim President*, CNN (Feb. 4, 2019), https://www.cnn.com/2019/02/04/americas/europe-guaido-venezuela-president-intl/index.html.

[16] Press Release, Off. of the Spokesperson, U.S. Dep't of State, The United States Takes Action Against Corrupt Maduro Regime Officials (June 27, 2019), https://uy.usembassy.gov/the-united-states-takes-action-against-corrupt-maduro-regime-officials/.

[17] Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, U.S. Recognition of Venezuela's 2015 National Assembly and Interim President Guaidó (Jan. 4, 2022), https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-interim-president-guaido/; *see also Democratic Aspirations*, *supra* note 2.

To "facilitate a democratic transition in Venezuela," the 2015 National Assembly adopted the Statute to Govern a Transition to Democracy to Reestablish the Validity of the Constitution of the Republic of Venezuela (the "Transition Statute"). *See Jiménez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019), *as revised* (Aug. 12, 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (internal quotation marks and citation omitted). Pursuant to the Transition Statute, Interim President Guaidó appointed an "*ad hoc* Managing Board" (the "*Ad Hoc* Board") to govern PDVSA, which has been wholly owned by Venezuela since its formation in 1975. *See id.* (citation omitted); *see also id.* at 822.

Guaidó's appointment of the *Ad Hoc* Board is valid under U.S. law. *Id* at 831– 41. The *Ad Hoc* Board manages PDVSA's assets from the United States and runs parallel to the Maduro-appointed board of PDVSA (the "Maduro Board"), which the United States does not recognize.[18]

### b.    Factual and Procedural History of This Action

Pursuant to indentures dated February 17, 2011, November 17, 2011, and May 16, 2014, PDVSA issued a series of notes (the "Indentures" and "Notes," respectively) to certain registered holders, which were guaranteed by Defendant PDVSA Petróleo, S.A. ("Petróleo," and together with PDVSA, "Defendants"). *See* Compl., Dkt. No. 1, ¶¶ 12 – 17. Plaintiff alleges that it subsequently acquired the Notes and requested authorization from the registered holders to commence litigation in connection with the Notes. *See id.* at ¶¶ 10 – 11.

On December 13, 2023, Plaintiff initiated this action for breach of contract, alleging that Defendants had failed to make required principal and interest payments under the Indentures. *See*

---

[18] *The Reality of PDVSA Ad Hoc*, PDVSA AD HOC, https://pdvsa-adhoc.com/en/the-reality-of-pdvsa-ad-hoc/ (last visited July 30, 2024); *see also Corporate Governance*, PDVSA, http://www.pdvsa.com/index.php?option=com_content&view=article&id=6558&Itemid=891&lang=en (last visited July 30, 2024).

*generally id.* Plaintiff sought damages against Defendants, jointly and severally, in the amount of $194,332,970.00, plus accrued and unpaid interest due pursuant to the terms of the Indentures and New York law. *See id.* at Prayer for Relief. Subsequently, Plaintiff filed an Affidavit of Service, indicating that the Complaint and related filings had been served on PDVSA through Corporation Service Company ("CSC") on January 5, 2024. *See* Affidavit of Service, Dkt. No. 13, ("Service Aff."). As a result, the deadline for PDVSA to answer or otherwise respond to the Complaint was set for March 5, 2024. *See* Dkt. No. 13.

By letter dated January 8, 2024, CSC informed Plaintiff that it was not able to accept service on PDVSA's behalf. *See* Declaration of Yehuda Goor in Support of Plaintiff's Request for a Clerk's Certificate of Default, Dkt. No. 17, ("Goor Decl.") ¶ 13; *see also id.* at Ex. 1, Dkt. No. 17-1. At no point did CSC forward the Complaint to PDVSA or otherwise notify PDVSA of this action. *See* Declaration of Horacio Francisco Medina Herrera ("Medina Decl.") ¶¶ 4 – 7.[19] Nonetheless, Plaintiff did not pursue alternate methods of service. Instead, Plaintiff proceeded with this action, despite knowing that PDVSA had not been served.

On May 8, 2024, Plaintiff initiated default proceedings, and the Clerk of Court entered a Clerk's Certificate of Default against Defendants. *See* Dkt. Nos. 16 – 18. Shortly thereafter, Plaintiff moved for default judgment, and PDVSA appeared through undersigned counsel and sought leave to oppose Plaintiff's motion. *See* Dkt. Nos. 19 – 26. In response, the Court ordered Plaintiff and PDVSA to file a joint letter setting forth each party's position. *See* Dkt. No. 27.

On June 26, 2024, the parties filed a joint letter, in which PDVSA requested leave to dismiss for lack of personal jurisdiction based on Plaintiff's failure to serve PDVSA in accordance

---

[19] As set forth in the Declaration of Horacio Francisco Medina Herrera, the *Ad Hoc* Board does not have access to the documents and records of the Maduro Board. Accordingly, PDVSA does not know the circumstances under which CSC stopped accepting service on PDVSA's behalf.

with the FSIA.  *See* Dkt. No. 28.  The Court then vacated the Clerk's Certificate of Default and granted PDVSA leave to move to dismiss.  *See* Dkt. No. 29.  This motion follows.

### III.    <u>LEGAL STANDARD</u>

"[P]ersonal jurisdiction is an essential element of a district court's jurisdiction, without which the court is powerless to proceed to an adjudication."  *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (internal quotation marks and alteration omitted).  Thus, F.R.C.P. 12(b)(2) empowers courts to dismiss actions for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).

On a 12(b)(2) motion, the plaintiff must make a "prima facie showing that personal jurisdiction is proper."  *Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 2024 WL 3197606, at *1 (S.D.N.Y. June 27, 2024) (internal quotation marks and citations omitted).  A plaintiff meets its burden by "making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *Yak v. BiggerPockets, L.L.C. et al.*, 2022 WL 67740, at *1 (2d Cir. Jan. 7, 2022) (internal quotation marks, alteration, and citation omitted).  While the court must generally accept a plaintiff's factual allegations as true at the motion to dismiss stage, it "does not need to accept as true a legal conclusion couched as a factual allegation nor allegations controverted by the defendant's affidavits that place the prima facie case in issue."  *Miden Pictures, Inc.*, 2024 WL 3197606, at *1 (internal quotation marks, alteration, and citation omitted).

## IV.    ARGUMENT

### a.    Because PDVSA is a Foreign Instrumentality, the Court's Jurisdiction Over PDVSA is Determined by the FSIA

As courts in this district have recognized, PDVSA—which is a separate limited company (sociedad anónima) wholly owned by Venezuela—is a foreign instrumentality.[20]  *Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*, 2019 WL 3242585, at *1 n. 1 (S.D.N.Y. July 3, 2019) ("PDVSA is a wholly-owned instrumentality of Venezuela"); *Skanga Energy & Marine Ltd. v. Arevenca, S.A.*, 2014 WL 3928704, at *8 (S.D.N.Y. Aug. 12, 2014) ("PDVSA is a government instrumentality.").   An entity qualifies as a foreign instrumentality under the FSIA if it is a "separate legal person" that is neither a citizen of the United States "nor created under the laws of any third country" and meets either of the following conditions: (1) it is "an organ of a foreign state"; or (2) "a *majority of [its] shares* or other ownership interest *is owned by a foreign state*." 28 U.S.C. § 1603(b) (emphasis added).

The FSIA grants foreign instrumentalities sovereign immunity.  *See Bartlett v. Baasiri*, 81 F.4th 28, 32 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1456 (2024).  Sovereign immunity is meant to afford instrumentalities, "some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns." *Id.* at 33 (internal quotation marks and citation omitted).  To that end, the FSIA provides the "sole basis for obtaining jurisdiction" over a foreign instrumentality in the United States.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see also Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 83 (2d Cir. 2013) ("The only source of subject matter jurisdiction over a foreign sovereign or its instrumentalities in the courts of the United States is the FSIA[.]") (citation omitted).  District

---

[20] Plaintiff acknowledges that PDVSA is a foreign instrumentality.  *See, e.g.*, Compl. ¶ 4.

courts shall have personal jurisdiction over foreign states and their instrumentalities where: (1) there is subject matter jurisdiction; and (2) the defendant is served in accordance with the FSIA. *See* 28 U.S.C. § 1330(a) – (b); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017) ("Under the FSIA, federal courts are empowered to exercise personal jurisdiction over a foreign sovereign when two conditions obtain: (1) an exception from jurisdictional immunity established by the FSIA applies, and (2) *the sovereign has been served with process in accordance with the FSIA's provisions*.") (emphasis added).

Section 1608(b) of the FSIA governs service of process upon foreign instrumentalities and prescribes three methods of service. *Chettri v. Nepal Bangladesh Bank, Ltd.*, 2014 WL 4354668, at *8 (S.D.N.Y. Sept. 2, 2014), *aff'd sub nom. Chettri v. Nepal Rastra Bank*, 834 F.3d 50 (2d Cir. 2016) (quoting 28 U.S.C. § 1608(b)). The first method of service is "in accordance with any special arrangement for service" between the plaintiff and the instrumentality. 28 U.S.C. § 1608(b)(1). If no such special arrangement exists, service may be effectuated through an authorized agent in the United States or "in accordance with an applicable international convention on service of judicial documents." *Id.* at § 1608(b)(2). If this second method is unavailable, the final method permits service through a letter rogatory, through the clerk of the court, or as directed by the court, provided that such service is "reasonably calculated to give actual notice." *Id.* at § 1608(b)(3). These three methods provide "the exclusive means of service in an FSIA case." *Doe v. Fed. Republic of Germany*, 2023 WL 6785813, at *5 (S.D.N.Y. Oct. 13, 2023).

Service on a foreign instrumentality is upheld only where the serving party has "substantially complied with the requirements of the FSIA." *Chettri*, 2014 WL 4354668, at *9 (internal quotation marks and citation omitted); *see also In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at *7 (S.D.N.Y. Apr. 5, 2022) ("'[S]ubstantial compliance' is the touchstone

for effective service under § 1608(b).") (internal quotation marks and citation omitted). The primary factor that courts consider under the substantial compliance test is "whether the defendant receive[d] actual notice and was not prejudiced by the lack of compliance with [the] FSIA." *Chettri*, 2014 WL 4354668, at *9 (internal quotation marks and citation omitted; second bracket added).

        **b.**      <u>**Plaintiff Failed to Serve PDVSA in Accordance With the FSIA**</u>

Here, Plaintiff attempted to serve PDVSA in accordance with a "special arrangement," which is the first method of service enumerated in § 1608(b), by serving CSC. *See* Service Aff. Plaintiff alleges that pursuant to the Indentures, CSC—a Delaware corporation that, among other things, operates as a registered agent for service of process[21]—was appointed as PDVSA's irrevocable agent to accept service of process for any action brought in connection with the Notes. *See* Compl. ¶ 8.

As a threshold matter, the president of the *Ad Hoc* Board of PDVSA has declared under penalty of perjury that CSC never forwarded the Complaint or otherwise notified PDVSA of this action. *See* Medina Decl. ¶ 7. This denial of service "rebuts the presumption of proper service." *Weingeist v. Tropix Media & Ent.*, 2022 WL 970589, at *10 (S.D.N.Y. Mar. 30, 2022).

Further, CSC did not have authority to accept service on behalf of PDVSA and rejected service within days of Plaintiff's attempted service. *See* Goor Decl. ¶ 13; *see also id.* at Ex. 1. Plaintiff's attempted service upon an entity that was not authorized to accept service fails to establish that PDVSA received actual notice of this action. *See Chettri*, 2014 WL 4354668, at *11 (holding that plaintiff failed to prove that service on individuals without authority to accept service

---

[21]*See Service of Process*, CORPORATION SERVICE COMPANY, https://www.cscglobal.com/service/entity-solutions/registered-agent-services/service-of-process/ (last visited Aug. 1, 2024).

established actual knowledge or notice); *Sakhrani v. Takhi*, 1997 WL 33477654, at *6 (S.D.N.Y. Sept. 10, 1997) (holding that service upon three different individuals without authority to accept service failed to establish defendant's actual notice of the lawsuit).

The unique circumstances of the *Ad Hoc* Board's governance of PDVSA distinguish PDVSA from a foreign corporate defendant that designated an irrevocable agent to accept service of process.  As set forth above, the *Ad Hoc* Board of PDVSA was established in 2019, *see supra* II.a.ii, eight years after the Maduro Board had entered into the Indentures that designated CSC as PDVSA's irrevocable service agent.  *See supra* II.b.  The *Ad Hoc* Board does not have access to the documents and records of the Maduro Board, including any information regarding when or why CSC stopped accepting service on PDVSA's behalf.  *See* Medina Decl. ¶¶ 4 – 7.  However, the U.S. Government sanctions issued in 2019, which prohibited U.S. companies such as CSC from engaging in transactions with PDVSA, may have contributed to CSC's resignation as PDVSA's service agent.  *See supra* II.a.ii.[22]  Failure to account for these circumstances, which are unique to PDVSA, is at odds with the comity afforded to foreign instrumentalities through the FISA.

Critically, PDVSA is not a foreign corporation, whose appointment of an irrevocable agent constitutes a waiver of its right to other methods of service.  *Cf. Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004) (holding that rejection of service by irrevocable agent of Brazilian corporation did not render service ineffective); *Recyclers Consulting Group, Inc. v. IBM-Japan, Ltd.,* 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997) (finding rejection of service by Japanese corporation's irrevocable agent insufficient to invalidate service).  Because CSC's rejection of service deprived PDVSA—a foreign

---

[22] *See also* SEELKE, *supra* note 11.

instrumentality—of the actual notice to which it is entitled under the FSIA, such rejection rendered service ineffective.  Upon learning in January 2024 from CSC that PDVSA would not be served, *see* Goor Decl. Ex. 1, Plaintiff could, and should, have pursued one of the other methods enumerated in the FSIA, namely under § 1608(b)(3).  As courts in this district have recognized, "[t]he service requirements of § 1608(b)(3) are not onerous," which renders a failure to effect service properly "particularly glaring."  *Pinnacle Madison Ave. Corp. v. Italian Trade Agency*, 2022 WL 20472090, at *8 (S.D.N.Y. Sept. 30, 2022); *see also Concord Reinsurance Co. v. Caja Navional De Ahorro Y Seguro*, 1994 WL 86401, at *3 (S.D.N.Y. Mar. 16, 1994) (noting the "ease with which plaintiff could have complied with the specific terms of § 1608(b)(3)," and dismissing for lack of personal jurisdiction based on failure to comply with § 1608(b)(3)).

> ### c.  <u>Due to Plaintiff's Failure to Substantially Comply With the FSIA's Service Mandates, the Court Lacks Personal Jurisdiction Over PDVSA</u>

Because Plaintiff has not substantially complied with the FSIA's service requirements, Plaintiff has failed to establish the Court's jurisdiction over PDVSA.  Indeed, "[i]f a plaintiff fails to perfect service as required under the applicable provision of § 1608, the court lacks personal jurisdiction over the foreign entity . . . regardless of whether the foreign sovereign would otherwise be amenable to suit under one of the delineated exceptions to the FSIA."  *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 32 (D.D.C. 2014).

Accordingly, this action must be dismissed for lack of personal jurisdiction under F.R.C.P. 12(b)(2).  *See Agbor v. Presidency of Republic of Equatorial Guinea,* 2019 WL 3526550, at *2 (S.D.N.Y. Aug. 1, 2019) (holding that improper service under the FSIA "would deprive the Court of personal jurisdiction over defendants" and adopting report and recommendation dismissing action for lack of personal jurisdiction due to insufficient service); *Howe*, 68 F. Supp. 3d at 26 (dismissing for lack of personal jurisdiction due to failure to serve in accordance with the FSIA);

*see also Mobil Cerro Negro*, 863 F.3d at 96 (reversing default judgment against Venezuela because plaintiffs had not served Venezuela in accordance with the FSIA and, thus, the district court lacked personal jurisdiction).

## V.    **CONCLUSION**

For the foregoing reasons, PDVSA respectfully requests that the Court grant PDVSA's motion to dismiss for lack of personal jurisdiction, pursuant to F.R.C.P. 12(b)(2), and grant any and all other relief to which PDVSA may be justly entitled.

Dated: August 5, 2024
      New York, New York

Respectfully submitted,

*/s/ Dora Georgescu*
Dora Georgescu
VINSON & ELKINS LLP
The Grace Building
1114 Avenue of the Americas
32nd Floor
New York, New York 10036
Telephone: (212) 237-0186
dgeorgescu@velaw.com

Andreina Escobar
VINSON & ELKINS LLP
845 Texas Ave, Suite 4700
Houston, Texas 77002
Telephone: (713) 758-2556
aescobar@velaw.com

*Counsel for Defendant Petróleos de Venezuela, S.A.*