**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

November 6, 2024

WRITER'S DIRECT DIAL NO.
**(212) 849-7220**

**VIA ECF**

WRITER'S EMAIL ADDRESS
**debraogorman@quinnemanuel.com**

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   *PDB Limited v. Petróleos de Venezuela S.A. and PDVSA Petróleo, S.A.*, Case No. 1:23-cv-10843-AT (S.D.N.Y.) – Response to Pre-Motion Letter

Dear Judge Torres:

We write on behalf of Plaintiff PBD Ltd. ("**PBD**") in response to Defendants' Petróleos de Venezuela S.A. ("**PDVSA**") and PDVSA Petróleo, S.A. ("**Petróleo**" and together with PDVSA, "**Defendants**") request for leave to move to dismiss PBD's Amended Complaint (the "**Pre-Motion Letter**").

Plaintiff is the beneficial holder of notes (the "**Notes**") issued by PDVSA pursuant to indentures dated February 17, 2011, November 17, 2011, and May 16, 2014 (collectively, the "**Indentures**") and guaranteed by Petróleo.  As set forth in the Amended Complaint (Dkt. 35), PDVSA and Petróleo have been in default under the terms of the Indentures since November 2017 and have failed to make contractually required payments of interest and/or principal.  On September 4, 2024, Plaintiff served PDVSA pursuant to Section 1608(b)(1) of the Foreign Sovereign Immunities Act (the "**FSIA**") "by delivery of a copy of the summons and complaint" to Corporation Service Company ("**CSC**") "in accordance with [the] special arrangement for service between the plaintiff and [PDVSA]" laid out in the bond indentures.  *See* Affidavit of Service, Dkt. 52.  On September 6, 2024, Plaintiff also served PDVSA pursuant to Section 1608(b)(3)(B) of the FSIA by "delivery of a copy of the summons and complaint, together with a translation of each into the official language of [Venezuela]" by "mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served."  *See* Clerk Certificate of Mailing Received, Dkt. 46; *see also* Declaration of Debra O'Gorman, Dkt. 54 at ¶¶ 7, 9.

   **I.   Plaintiff Has Standing**

Plaintiff has pled facts sufficient to establish standing to assert claims under the Indentures.  Plaintiff is a beneficial holder of the Notes at issue, and has ***twice*** obtained written authorization

to take action from the holder of record of the Notes.  Plaintiff first obtained written authorization from Cede & Co., as nominee of The Depository Trust Company ("**DTC**"), on May 1, 2024 to sue with respect to the holdings included in the original complaint.  *See* Dkt. 21-5.  On August 23, 2024, Cede & Co., as DTC's nominee, provided written authorization "to take any and all actions and exercise any and all rights and remedies" with respect to PDB's holdings, including additional holdings acquired since the initial complaint was filed.  Attached as **Exhibit** 1 is a true and correct copy of that authorization.  Thus, because Plaintiff has now established that it *did* receive authorization from the registered holder to initiate the action on the same date as the filing of the Amended Complaint, it would be completely futile for Defendants to seek dismissal on this basis.[1]

Defendants misstate the law with respect to the requirement to obtain authorization to sue.  Although a plaintiff "must receive authorization from the registered holder of the bond" that authorization "may be granted *subsequent* to the filing of a lawsuit."  *Etevob v. Republic of Argentina*, 471 F. Supp. 2d 432, 443 (S.D.N.Y. 2007), *aff'd sub nom. Mazzini v. Republic of Argentina*, 282 F. App'x 907 (2d Cir. 2008) (emphasis added).  Recently, the Southern District of New York rejected this very argument on a motion to dismiss filed by Petróleo with respect to indentures with identical language to those at issue here.  *See Lovati v. Petroleos de Venezuela, S.A.*, 2021 WL 5908953, at *2 (S.D.N.Y. Dec. 14, 2021) (denying motion to dismiss for lack of standing because "[w]hile Plaintiffs ultimately need authorization to sue from the registered holder, that authorization need not pre-date the filing of this lawsuit") (citing *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005)).  The facts of *Sudarsan v. Seventy Seven Energy Inc.*, are distinguishable because, there, plaintiff did not even plead that it was registered holder, whereas here, Plaintiff makes that assertion repeatedly throughout its Amended Complaint.  *Compare* Dkt. 35 at ¶¶ 1, 3, 10, 12, 14, 16 *with* 2018 WL 1088004, at *4 (S.D.N.Y. Feb. 6, 2018).

Defendants' second argument—that Plaintiff has failed to satisfy conditions precedent to instituting an action to enforce the Indentures—holds no water.  This exact issue, on provisions identical to the Indentures at issue here, was decided against Petróleo in *Lovati v. Petroleos de Venezuela, S.A.*, 2020 WL 5849304 (S.D.N.Y. Sept. 30, 2020).  As discussed in *Lovati*, under *Quadrant Structured Products. Co., Ltd. v. Vertin*, 23 N.Y.3d 549 (2014), notwithstanding the "no-action" clause in the Indentures, there is no bar to "specifically individual suits for enforcements of the notes."  *Lovati*, 2020 WL 5849304 at *5.  Additionally, Defendants' argument ignores Article 5.01(l) of the Indentures, which "protects noteholders' rights and remedies existing outside of the Indenture, including the common law right to sue under the Notes."  *Id.*; *see* Dkt. 35-1, Art. 5.01(l); Dkt. 35-2, Art. 5.01(l); Dkt. 35-3, Art. 5.01(l).

Defendants' attempts to apply the pleading standard necessary to establish Article III **constitutional standing** detailed in *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, 2013 WL 3762882 (S.D.N.Y. July 18, 2013), *see* Pre-Motion Letter at 3, rather than **contractual standing** are also misplaced.  In *Cortlandt*, the claim was dismissed because an invalid assignment of a claim failed to establish injury-in-fact as required under Article III of the Constitution.  *See Cortlandt St. Recovery Corp.*, 2013 WL 3762882, at *1 (discussing the

---

[1]  To the extent Defendants persist in their insistence to move to dismiss on this basis, Plaintiff respectfully requests permission to amend the complaint to clarify the record and fully dispense with Defendants' argument that Plaintiff lacks standing on this basis to bring this action.

2

requirement that "the injured party … satisfy the constitutional requirement of an injury-in-fact") (cleaned up). The internal citation from *Cortlandt* that Defendants conspicuously note as omitted explicitly states that the "affirmatively and plausibly" pleading standard applies where there is a "Rule 12(b)(1) motion to dismiss" for lack of constitutional standing.[2] *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.2011). The case to which Defendants cite next, *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 382113, at *12 (S.D.N.Y. Feb. 1, 2024), explains that "[i]n contrast to Article III standing, contractual standing ... asks a different question: whether a party has the right to enforce a contract." Because "[c]ontractual standing speaks to a party's right to relief for breach of contract" it is a question "appropriately decided on a motion to dismiss." *Id.* (cleaned up); *see also SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (explaining that "contractual standing goes to the merits" and "is not a matter of constitutional standing"). Having drawn this distinction, the *Terry* court went on to apply the familiar pleading standard for motions to dismiss under Rule 12(b)(6) by "[a]ccepting all facts alleged . . . as true, and drawing all reasonable inferences in the [pleading party's] favor." *Terry*, 2024 WL 382113, at *13.

Defendants therefore cannot show that Plaintiff's Amended Complaint warrants dismissal under Fed. R. Civ. P. 12(b)(6) for lack of contractual standing because, after drawing all reasonable inferences in Plaintiff's favor and assuming all well-pled factual allegations to be true, Plaintiff has pled factual allegations that plausibly give rise to an entitlement to relief. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## II. Plaintiff Served PDVSA Pursuant to 28 U.S.C. 1608(b)(1) and 1608(b)(3)

Plaintiff validly served the Amended Complaint on PDVSA in accordance with multiple provisions the FSIA. Any further attempt by PDVSA to contest service and seek to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(2) would be frivolous. Plaintiff served PDVSA pursuant to FSIA Section 1608(b)(1) on September 4, 2024 "by delivery of a copy of the summons and complaint" to CSC "in accordance with [the] special arrangement for service between the plaintiff and [PDVSA]" laid out in the bond indentures. *See* Affidavit of Service, Dkt. 52. Service via this "special arrangement" is consistent with the terms of the Indentures, in which PDVSA "irrevocably appointed" CSC "as its authorized agent on which any and all legal process may be served in any such action, suit or proceeding brought in the United States District Court for the Southern District of New York." Dkt. 35-1, Art. 20; Dkt. 35-2, Art. 20; Dkt. 35-3, Art. 20. Any claim that service upon CSC is invalid because CSC did not forward the Amended Complaint or otherwise notify PDVSA of this action or that CSC did not have authority to accept service on behalf of PDVSA is unavailing. Courts in this District have held that CSC's "refus[al] to forward [service] to PDVSA does not render service ineffective under FSIA." *G&A Strategic Investments 1 LLC v. Petróleos de Venezuela, S.A.*, 2024 WL 4520067, at *2 (S.D.N.Y. Oct. 17, 2024); *see also Pharo Gaia Fund, Ltd. v. Petróleos de Venezuela, S.A.*, 2024 WL 917608, at *2 (S.D.N.Y. Mar. 4, 2024). "Holding otherwise would invalidate freely negotiated, mutually beneficial

---

[2] Notwithstanding, Plaintiffs also satisfy the pleading standard under Rule 12(b)(1) because the Amended Complaint "affirmatively and plausibly suggests[s] that [Plaintiff] has standing to sue." *Cortlandt St. Recovery Corp.*, 2013 WL 3762882, at *1.

arrangements and it would also contradict the plain text of the FSIA." *See G&A Strategic Investments 1 LLC*, 2024 WL 917608, at *2.[3]

In light of PDVSA's groundless claim that service on CSC could not validly be made, Plaintiff also served PDVSA pursuant to FSIA Section 1608(b)(3)(B) on September 6, 2024, by "delivery of a copy of the summons and complaint, together with a translation of each" by "mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served." *See* Clerk Certificate of Mailing Received, Dkt. 46.[4] Plaintiff properly followed the procedures set forth in this section, as well as the Clerk's Office Foreign Mailing Instructions. Moreover, the Clerk's Office has not only confirmed that it has copies of these documents, but has also indicated that they may be accessed for viewing. Dkt. 54-2.[5]

PDVSA's *Ad Hoc* Board was served at the address provided by its Chairman, Mr. Horacio Francisco Medina Herrera, in a registration statement submitted pursuant to the Foreign Agents Registration Act. This plainly provided PDVSA "the actual notice to which it is entitled under the FSIA." Dkt. 31 at 12. And PDVSA does not state otherwise. Service by this method is not only valid under the FSIA, but also accords with the method PDVSA itself put forward as acceptable in its previous filings arguing that service upon CSC was improper. In its prior Motion to Dismiss, PDVSA asserted that the Ad Hoc board has been appointed by the 2015 National Assembly "to govern PDVSA" and "manages PDVSA's assets from the United States and runs parallel to the Maduro-appointed board of PDVSA … which the United States does not recognize." *Id.* at 5. In a declaration accompanying this filing, Mr. Horacio Francisco Medina Herrera explained that the "*ad hoc* board took control of PDVSA abroad, and especially in the United States." Dkt. 32 at 2. He continued to note that he has "been a member of the PDVSA's *ad hoc* Board of Directors since June 30, 2020, and ha[s] functioned as its Chair from December 7, 2020, to the present." *Id.* at 1.

In light of its previous assertions regarding the proper method of service, PDVSA's summary assertion that Mr. Medina "is not authorized to accept service on behalf of PDVSA" is contrived and without merit. Pre-Motion Letter at 3. Instead, the acknowledgement that Mr. Medina ***did receive*** the service of the Amended Complaint demonstrates that valid service was made, and actual notice has been provided to PDVSA.

---

[3] Moreover, PDVSA has failed to comply with its duty to appoint a new agent for service of process following CSC's claim of unavailability. *See, e.g.*, Dkt. 35-1, Art. 10.10(b).

[4] Plaintiff's decision to serve PDVSA under 1608(b)(3) is not an admission that service upon CSC under 1608(b)(1) was unavailable; rather, that step was taken out of an abundance of caution. *See G&A Strategic Investments 1 LLC*, 2024 WL 917608, at *2 n.3 (explaining that "[i]t is irrelevant … that after service was completed [under 1608(b)(1)], plaintiffs, out of an abundance of caution, also served the Ad Hoc Board and its Chairman").

[5] Defendants argue that service under Section 1608(b)(3)(B) is invalid because Plaintiff "fail[ed] to certify to the Court that it sent to Mr. Medina a set of documents in Venezuela's official language, Spanish," and also "failed to furnish to the Court copies of all documents for the Court's file." Pre-Motion Letter at 4. Both arguments fall flat because they are factually inaccurate. *See* Dkt. 54 at ¶¶ 4-5. Had Defendants conducted even basic diligence —for example, by contacting the Court's Records Department—they could have avoided making inaccurate representations (and frivolous arguments) to the Court.

Respectfully,

*/s/ Debra D. O'Gorman*
Debra D. O'Gorman